## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **Kevin R. H.,**[1] | Case No. 6:20-cv-00215-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Mark A. Manning and Katherine Eitenmiller, Harder Wells Baron & Manning, 474 Willamette Street, Eugene, OR 97401. Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Benjamin J. Groebner, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff, Kevin H., seeks judicial review pursuant to 42 U.S.C. § 405(g) of the decision by the Commissioner of Social Security ("Commissioner") denying his application for Title XVI Supplemental Security Income ("SSI") benefits under the Social Security Act.

Plaintiff raises three issues: (1) whether the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion of David Archambault, Ph.D.; (2) whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony; and (3) whether the ALJ erred in rejecting the lay witness statement of Plaintiff's mother. ECF 18 at 4–5. This Court finds no harmful error with respect to the second and third issues. As to the first, the Court determines that the ALJ failed to properly evaluate the medical opinion of Dr. Archambault, and therefore, the ALJ's decision is reversed and remanded. The ALJ is directed to evaluate Dr. Archambault's medical opinion in conformance with the Ninth Circuit's directives, and, if appropriate, reformulate the residual functional capacity ("RFC") and proceed through subsequent steps in the disability determination.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

PAGE 2 – OPINION AND ORDER

interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1980. AR 119. He has past relevant work as a warehouse worker, store laborer, and fast food worker and has an Associate's degree. AR 23, 34, 132–44. Plaintiff filed an application for SSI on October 31, 2017, alleging disability beginning September 1, 2016. AR 119. He was 35 years old on his alleged onset date. AR 55. Plaintiff alleges disability due to bipolar disorder, generalized anxiety disorder, intermittent explosive disorder, and left side hearing loss. AR 17.

Plaintiff's application was denied initially and upon reconsideration. AR 86–89 (January 3, 2018 initial denial), 91 (noting Plaintiff's January 26, 2018 request for reconsideration), 94–96 (April 12, 2018 denial on reconsideration). Plaintiff requested a hearing. AR 97–98. Plaintiff appeared with counsel at an administrative hearing on February 8, 2019 before ALJ Elizabeth Watson. AR 28.

On March 8, 2019, the ALJ issued a decision finding Plaintiff not disabled. AR 12–24. Plaintiff timely requested review of the ALJ decision on March 13, 2019. AR 116–18. On

December 12, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's

March 8, 2019 decision the Commissioner's final administrative decision in this case. AR 1–3.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099–100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since October 31, 2017, the application date. AR 17. The ALJ found at step two that Plaintiff had the following severe impairments: bipolar disorder, generalized anxiety disorder, intermittent explosive disorder, and left side hearing loss. *Id*. At step three, the ALJ concluded that, although these impairments constituted severe impairments under 20 C.F.R. § 416.920(c), the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*.

The ALJ found at step four that Plaintiff has the RFC to "perform a full range of work at all exertional levels," but that Plaintiff "must avoid exposure to workplace hazards such as operational control of heavy machinery, hazardous machinery, and unprotected heights," "is limited to jobs that require no contact with the general public and no more than occasional contact with coworkers and supervisors," and has a "tolerance for exposure to noise in the workplace [of] no more than a 'moderate' nose intensity level." AR 19. Additionally, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 20.

The ALJ determined that Plaintiff was unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 23; *see also* AR 24 (citing jobs such as "assembler 2, DOT# 739.687-030" "electronic worker, DOT# 726.687-010," and

"cleaner, housekeeper, DOT# 323.687-014"). Therefore, the ALJ found that Plaintiff had not been under a disability since October 31, 2017, the application date. AR 24.

**DISCUSSION**

Plaintiff raises three contentions: (1) the ALJ erred in evaluating the consultative medical opinion of David Archmbault, Ph.D., ECF 18 at 4; (2) the ALJ improperly rejected Plaintiff's subjective symptom testimony, *id.*; and (3) the ALJ improperly rejected the lay witness statements of Plaintiff's mother, Lori H., *id.* at 5. Each contention is addressed in turn below.

**A.  ALJ Improperly Evaluated the Medical Opinion of Dr. Archambault**

**1.  Legal Standard**

Plaintiff filed his application for benefits on October 31, 2017. AR 15. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020). The ALJs are not required to explain how

they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

### 2. Analysis

In the instant case, the ALJ erred in her evaluation of Dr. Archambault's medical opinion by improperly concluding that his opinion was not based on objective medical evidence and by failing to consider whether the opinion was consistent with other record evidence.

Dr. Archambault performed a consultative psychiatric examination of Plaintiff on December 3, 2018. AR 275. Dr. Archambault reviewed clinical notes from Coos Health & Wellness Clinic from August 2017 to July 2018 and a May 5, 2017 screening assessment report. *Id*. He also conducted a "diagnostic interview," AR 277–79, and "mental status examination," AR 279–82. Dr. Archambault made several observations, including that Plaintiff "would have difficulty performing detailed and complex tasks," "interacting with coworkers and the public," "performing work activities on a consistent basis without special or additional instructions," "maintaining regular attendance," and "dealing with the usual stress encountered in the workplace." AR 281–82. The doctor also filled out a Medical Source Statement of Ability to Do Work-Related Activities, in which he noted mild limitations in Plaintiff's ability to understand, remember, and carry out simple instructions, moderate limitations in Plaintiff's ability to make judgments on simple work-related decisions, and marked limitations on Plaintiff's ability to understand, remember, and carry out complex instructions, as well as make judgments on complex work-related situations. AR 283. He further noted moderate limitations in Plaintiff's

ability to interact appropriately with the public and supervisors and marked limitations in his

ability to appropriately interact with co-workers and respond to usual work situations. AR 284.

The ALJ found Dr. Archambault's opinion "less persuasive." AR 22. She explained that

"it is based on the [Plaintiff's] subjective self-reported history rather than objective treatment

notes or observed behavior" and "Dr. Archambault does not cite any objective evidence to

support limitations in maintaining regular attendance . . . and in difficulty dealing with the usual

stress encountered in the workplace." *Id*. Further, the ALJ found the opinion inconsistent with

Dr. Archambault's own observations of Plaintiff as "friend[ly] and polite," *id*. (citing AR 279),

which were themselves "consistent with the claimant's treatment records showing improved

functioning," *id.* (citing AR 293).

Under the new regulations, the ALJ must account for, at minimum, supportability and

consistency, when evaluating the persuasiveness of a medical opinion. *See Patricia F.*, 2020 WL

1812233, at *4. The more consistent a medical opinion is with the evidence from other medical

and nonmedical sources, the more persuasive the opinion. 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2). In assessing supportability, the more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support her medical opinion, the

more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

The ALJ found Dr. Archambault's opinion unpersuasive largely because it was "based on

[Plaintiff's] subjective self-reported history rather than objective treatment notes or observed

behavior." AR 22. The Ninth Circuit has cautioned that "the rule allowing an ALJ to reject

opinions based on self-reports does not apply in the same manner to opinions regarding mental

illness" because reliance on the patient's self-report "is the nature of psychiatry." *Buck v.

Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the court held that the doctor's "partial

reliance" on the plaintiff's self-reported symptoms was not a reason to reject his testimony. *Id*. Here, Dr. Archambault's opinion similarly only partially relied on Plaintiff's self-reports. *See generally* AR 275–79 (recounting Plaintiff's self-reported symptoms and medical history). Dr. Archambault also conducted a "diagnostic interview" and "mental status examination," and reviewed treatment records. AR 275, 277–82.[2] As the Ninth Circuit explained, "clinical interviews and mental status evaluations are objective measures that cannot be discounted as a self-report." *Raicevic v. Saul*, 836 F. App'x 569 (9th Cir. 2021) (unpublished) (internal quotation marks omitted) (quoting *Buck*, 869 F.3d at 1049). It was error for the ALJ to characterize Dr. Archambault's diagnostic interview and mental status examination as merely reflecting Plaintiff's "subjective self-reported history" and not "objective treatment notes or observed behavior," AR 22, and on that basis find the opinion less persuasive.

To the extent the ALJ considered consistency, the ALJ concluded that Dr. Archambault's observation that Plaintiff was "friend[ly] and polite," AR 297, was "consistent with [Plaintiff's] treatment records showing improved functioning," but inconsistent with his own medical opinion, AR 22. Though Defendant appears to contend that the ALJ "found Dr. Archambault's opinion inconsistent with the treatment records," ECF 19 at 8, the only statement regarding consistency suggests his opinion is *consistent* with the treatment records. *See* ECF 20 at 3. Importantly, the ALJ failed to explain why the findings she considered less persuasive, *i.e.*, those related to difficulty performing complex tasks and consistently performing work activities, interacting with coworkers and the pubic, maintaining regular attendance, and dealing with workplace stress, were or were not consistent with the medical record or other testimony. *See id*.

---

[2] Dr. Archambault's report refers to a "diagnostic interview." AR 277. Both Plaintiff and Defendant refer to a "clinical interview." *See* ECF 18 at 9; ECF 19 at 7. This Court assumes that parties are referring to the "diagnostic interview" and that these terms are interchangeable.

Finding error, the Court determines such error was not harmless. Dr. Archambault opined that Plaintiff had "marked" limitations in his ability to appropriately interact with co-workers and respond to usual work situations and "moderate" limitations as to interacting with the public and supervisors. AR 284. When Plaintiff's counsel inquired as to whether jobs exist where "the person basically is independent of basically working with any other coworkers or around even coworkers," the VE stated while jobs existed "[w]orking independently," no jobs existed "[n]ot having anybody even around you." AR 51; *see also* AR 50 (noting a lack of jobs "in competitive employment" where an employee would receive monitoring and prompting to stay on task); AR 47–48 (noting VE did not "know of any jobs where you would just check in with a supervisor maybe at the beginning of the shift and not have to deal with them anymore"). Because crediting Dr. Archambault's opinions as to Plaintiff's social limitations suggests that no jobs are available, the error is harmful. This Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1051, 1055–56 (9th Cir. 2006).

As such, this Court reverses and remands for further proceedings on the limited issue of Dr. Archambault's testimony. The ALJ must evaluate whether Dr. Archambault's opinion is persuasive by properly considering supportability—keeping in mind the Ninth Circuit's directive that some reliance on self-reports may be warranted when evaluating mental illness—and consistency. If appropriate, the ALJ should reformulate the RFC and proceed through the remaining disability steps, including obtaining new Vocational Expert testimony.

## B.  ALJ Properly Discredited Plaintiff's Subjective Symptom Testimony

### 1.  Legal Standard

There is a two-step process for evaluating a plaintiff's testimony about the severity and limiting effect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the

ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the plaintiff "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a plaintiff's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the plaintiff's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

The ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's testimony. *See Lingenfelter*, 504 F.3d at 1036. Therefore, the ALJ did not err.

At the hearing before the ALJ, Plaintiff testified regarding issues he faced in the workplace. Plaintiff testified that he "got in a fight with a coworker" at his last job and was fired, and that he had a history of fighting or arguing with coworkers and supervisors. AR 36, 40–41. He also testified that since he began taking medication, he has experienced frequent depressive states, tends to isolate and not leave the house, and is more "emotionless" and does not fight during those times. AR 37, 42–43. In his Function Report, Plaintiff reported that he "can[']t work with people," AR 147, "only go[es] out when forced, AR 149, "hate[s] people," and is "angry all the time," AR 151.

The ALJ found that Plaintiff's impairments could cause the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence or other evidence in the record." AR 20. The ALJ explained that his hearing testimony conflicted with "treatment records show[ing] that his impairments have improved with treatment." *Id.* (citing AR 295 (October 4, 2018 record)). The ALJ then summarized in detail Plaintiff's treatment records from January 2017 through December 2018. *See* AR 20–21. The ALJ noted that Plaintiff's treatment records demonstrate that adjustments to Plaintiff's medication regimen and dosage resulted in changes and improvements in Plaintiff's functioning over time, though some impairments remained. *See id.* On that record, the ALJ fashioned an RFC that "limits [Plaintiff] to jobs that require no contact with the general public and no more than occasional contact with coworkers and supervisors," and limited exposure to workplace hazards. AR 21.

Specifically, the ALJ recounted the following medical records. In January 2017, Plaintiff was seen by a doctor who noted that Plaintiff has stopped taking his prescribed medications and had "seen worsening of his [mental health] symptoms." AR 201. The doctor encouraged Plaintiff

to "cut back significantly" on his marijuana use and prescribed him medication to treat depression. AR 203. In April 2017, at his follow-up appointment, Plaintiff noted that he "felt like [he] was making some progress" on the depression medication, and the doctor increased the dosage. AR 118–200. On May 5, 2017, Plaintiff was assessed at Coos Health & Wellness. *See* AR 260–63. He reported "anger issues," "anxiety and depression," and isolating behaviors, AR 260–61, and was referred to therapy and a medication evaluation, AR 263.

On August 15, 2017, Plaintiff was seen by a psychiatric nurse practitioner. Plaintiff reported he was "doing okay," on his current medication, and the provider noted Plaintiff "appear[ed] to be stabilizing on his current regimen of psychotropic medications," and increased the dosage. AR 256. He was seen by the same provider on September 15, 2017. Plaintiff again reported "doing okay" and that "he gets along well with others for the most part [but] when provoked, he continues to display some aggressive behavior." AR 254. He requested that his "dose of [medication] . . . be optimized for greater efficacy," and the provider increased his dosage. *Id*. Plaintiff was seen again by the same provider on November 28, 2017. Plaintiff reported that "overall, things are going well," despite "some symptoms of depression." AR 233. He stated that his "mood is relatively stable," "he has not been fighting or acting out like he ha[d] been in the past," and his medication was "working to control signs and symptoms of his disorder." *Id*. He further reported "getting along well with others." *Id*. The provider assessed Plaintiff as "relatively stable" and prescribed him an additional medication to reduce his depression. *Id*. One month later, Plaintiff was again seen by the same provider, and reported that the "most recent changes in his [medication] regimen are helping to control signs and symptoms" and "he gets along well with others," but "isolates frequently." AR 231. The provider noted he was "relatively stable," and increased the dosage of one of the medications. AR 231–32. On

February 5, 2018, during a follow-up appointment with the same provider, Plaintiff explained that one of his medications was "not working for him" and requested new medication, but also noted that "he is getting along relatively[] well with others" and did not mention any concerns regarding anger or isolation. AR 228. In March 2018, Plaintiff was tapering from one medication, reported he was "less depressed" and "gets along with others for the most part," but was continuing to isolate. AR 273. The provider started Plaintiff on a new medication to address anxiety, agitation, and restlessness. AR 274. Plaintiff was seen again on May 4, 2018. He reported fewer episodes of mania and panic attacks since his prior visit and that he "gets along relatively well with others," but continued to isolate. AR 271. His provider increased his dosage of one of the medications. AR 272. The following month, Plaintiff reported "some depression and anxiety," though he also reported "getting along well with others." AR 269. His medication regimen was adjusted. *Id.* at 269–70. Later that month, Plaintiff reported that although he did not "feel efficacy" from his new medication, the medication regimen was "working to control signs and symptoms of his disorders." AR 267. He again reported getting along well with others, but isolating. *Id.* His medication dosage was adjusted. AR 268. In July 2018, Plaintiff reported his medications were "working at some level," and his dosage was increased. AR 265. Plaintiff was seen again on September 6, 2018. He reported "doing okay," getting along with others, and that the "most recent changes in his regimen are helping," but continued to "isolate most of the time." AR 297. His medication dosage was increased. *Id.* In October 2018, Plaintiff again reported that he was "doing okay" and that his medication was "control[ing] sign and symptoms of his disorders." AR 295. He reported getting along well with his parents. *Id.* In December 2018, Plaintiff again reported "doing okay" and getting along well with others. AR 293. The provider

noted that he was "relatively stable," but that his prognosis was "somewhat limited" as Plaintiff

"isolates frequently and is unable to interact with people in public settings." AR 293–94.

Plaintiff argues that "the overall record documents waxing and waning mental

symptoms," rather than improvement. ECF 18 at 12. Though the Ninth Circuit has cautioned that

"it is error for an ALJ to pick out a few isolated instances of improvement over a period of

months or years and to treat them as a basis for concluding a claimant is capable of working,"

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), the court has stated that mental health

symptoms may subside or improve with treatment and "evidence of medical treatment

successfully relieving symptoms can undermine a claim of disability," *Wellington v. Berryhill*,

878 F.3d 867, 876 (9th Cir. 2017). In the instant case, the ALJ did not "improperly single[] out a

few period of temporary well-being from a sustained period of impairment" to discredit

Plaintiff's testimony. *Garrison*, 759 F.3d at 1018. Rather, the ALJ analyzed nearly a year's

worth of Plaintiff's treatment records. These records show, for example, that while Plaintiff

initially reported "anger issues," *see* AR 260 (May 5, 2017 record), his aggressive behaviors

lessened overtime and his ability to get along with others improved, *see, e.g.*, AR 233

(November 28, 2017 record), 228 (February 5, 2018 record), 273 (March 30, 2018 record), 269

(June 1, 2018 record), 295 (October 4, 2018 record). Plaintiff also consistently reported that he

was "doing okay" and that his medication controlled the "signs and symptoms of his disorders."

*See, e.g.*, AR 231 (December 26, 2017 record), 267 (June 29, 2018 record), 295 (October 4, 2018

record). The treatment record indicates that while Plaintiff continued to isolate, he had sustained

improvement regarding his ability to interact and get along with others and medication

diminished his symptoms. Citing to this record, the ALJ offered specific, clear and convincing

reasons to discount his testimony relating to the intensity, persistence, and limiting effects of his

symptoms from his mental disorders.[3] Though Plaintiff disagrees with the ALJ's analysis, the analysis was reasonable, and this Court must uphold the ALJ's reasonable conclusion "[w]here evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 679.

## C. ALJ Properly Considered Lay Witness Testimony

### 1. Legal Standard

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). An ALJ may discount lay witness testimony only by providing reasons that are germane to each witness. *Id.* at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (alterations in original) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)); *see also id.* ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

---

[3] As Defendant notes, "though the ALJ did not fully credit [Plaintiff's] allegations, she did not reject those complaints outright." ECF 19 at 3. The ALJ incorporated many of Plaintiff's alleged social interaction limitations into the RFC, including precluding any contact with the public and limiting contact with coworkers. AR 20.

### 2. Analysis

The ALJ properly considered the lay witnesses testimony provided by Plaintiff's mother, Lori H. To the extent the ALJ discounted her testimony, any error was harmless as the ALJ properly discredited Plaintiff's testimony, which described the same symptoms and limitations.

Plaintiff contends that while the ALJ stated the RFC is "generally consistent" with Plaintiff's mother's statement, she "in fact reported rather debilitating limitations" which were not properly credited and incorporated into the RFC. ECF 18 at 14–16; *see generally* AR 165–72 (Third-party Function Report). In her statement, Lori H. stated that Plaintiff cannot "retain proper information about his job," "his anger bursts out and could turn violent," and that Plaintiff "does well for a bit then it all goes south." AR 165. She also noted that she must remind or tell Plaintiff to do certain tasks such as those involving personal care, AR 166, and house and yard work, AR 167. Further, she emphasized social interaction and anger issues. *See, e.g.*, AR 169 ("He hates people."), 170 ("He hates people [and] several boss[es] have fired him for it."), 171 (explaining that stress "makes him erupt in anger").

In formulating the RFC, the ALJ stated that the mother's statement "was considered" and the RFC "is generally consistent with [the] statement, containing mental limitations related to social interactions." AR 23. The ALJ did not discredit the mother's testimony. Rather, the ALJ considered her testimony and concluded that her testimony indicated the limitations related to Plaintiff's "ability to talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others," were caused by Plaintiff's "anger." AR 23. Accordingly, the ALJ included limitations on Plaintiff's interactions with coworkers, supervisors, and the public in the RFC. *See* AR 19.

To the extent the ALJ did discount Plaintiff's mother's testimony without properly providing reasons germane to her testimony, any error is harmless. The lay testimony does not

describe limitations not already described by Plaintiff's own testimony. For example, both Plaintiff and his mother describe at length Plaintiff's anger issues, *compare* AR 165, 169, 171 *with* AR 151, as well as issues with concentration and memory, *compare* AR 166–67 *with* AR 147, 149. As explained above, the Court finds that the ALJ properly provided specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony by citing to extensive treatment records demonstrating improvement and a reduction in symptoms over time. This analysis applies with equal force to Plaintiff's mother's testimony. *See Molina*, 674 F.3d at 1122; *see also Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Therefore, even accepting that the ALJ discounted the lay testimony and improperly failed to provide reasons for doing so, any error was harmless as it was "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1122 (internal quotation marks and citations omitted).

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 23rd day of September, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge